**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| TAMALA H. PACK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18CV191 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Tamala H. Pack, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 13; see also Docket Entry 11 (Plaintiff's Brief); Docket Entry 14 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI. (Tr. 335-43.) Upon denial of those applications initially (Tr. 177-206, 238-45) and on reconsideration (Tr. 207-37, 249-66), Plaintiff requested a hearing

de novo before an Administrative Law Judge ("ALJ") (Tr. 267-68). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 54-82.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 34-48.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 16-22, 32-33, 332-34), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1.   [Plaintiff] meets the insured status requirements of the [] Act through December 31, 2016.

2.   [Plaintiff] has not engaged in substantial gainful activity since December 1, 2012, the alleged onset date.

. . .

3.   [Plaintiff] has the following severe impairments: left knee degenerative joint disease, fibromyalgia, bilateral carpal tunnel syndrome with trigger finger, lumbar degenerative disc disease, and obesity.

. . .

4.   [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5.   . . . [Plaintiff] has the residual functional capacity to perform light work . . . except she could stand or walk for four hours in an eight-hour day and sit for six hours in an eight-hour day. She could perform occasional climbing, stooping, kneeling, crouching, balancing, and crawling. [Plaintiff] could frequently finger bilaterally. She would have to avoid concentrated exposure to workplace hazards.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the [] Act, from December 1, 2012, through the date of this decision.

(Tr. 39-48 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through

application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1992) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and

was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a

---

[1] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a
(continued...)

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

## B.  Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ's decision cannot be supported by substantial evidence since the ALJ failed to reconcile his determination that

---

[3] (...continued)
"physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

[Plaintiff] could perform light work with his conclusion that [Plaintiff] could only stand and walk four hours of an eight-hour workday" (Docket Entry 11 at 5 (bold font and single-spacing omitted)); and

2) "[t]he ALJ's failure to determine that [Plaintiff's] depression and anxiety disorders were severe impairments and properly account for the limitations [Plaintiff] experiences as a result of these impairments in the RFC is harmful error" (id. at 13 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 14 at 10-24.)

### 1. Conflicts in RFC and Hypothetical Question

In Plaintiff's first assignment of error, she alleges that "[t]he ALJ's decision cannot be supported by substantial evidence since the ALJ failed to reconcile his determination that [Plaintiff] could perform light work with his conclusion that [Plaintiff] could only stand and walk four hours of an eight-hour workday." (Docket Entry 11 at 5 (bold font and single-spacing omitted).) According to Plaintiff, "th[at] conflict [wa]s not resolved by the ALJ's reliance on the [VE] at the hearing since the ALJ limited [Plaintiff] to sedentary work activity in the proposed hypotheticals [sic] to the VE and the VE did not comment on whether [Plaintiff] would perform work activity at the light exertional level if limited to that proposed RFC." (Id. at 6 (citing Tr. 80-

81).)  Plaintiff further maintains that, given that her RFC actually represented sedentary exertion and she remained only six months from her 50th birthday at the time of the ALJ's hearing, "[t]he ALJ's failure to consider the non-mechanical application of the Medical[-]Vocational Guidelines ('[G]rids') is harmful error in [Plaintiff's] claim." (Id. at 9 (bold font and single-spacing omitted).)  Plaintiff argues that, "[r]emand for further consideration is appropriate given the ALJ's failure to provide any explanation or discussion of how he resolved th[o]se inconsistencies before reaching his RFC conclusions." (Id. at 8.) Plaintiff's contentions do not warrant relief.

Plaintiff first argues that the ALJ's RFC suffered from an internal inconsistency, because "[t]he ALJ failed to reconcile his determination that [Plaintiff] could perform light work with his conclusion that [Plaintiff] could only stand and walk four hours of an eight-hour workday." (Id. at 5 (emphasis added) (bold font and single-spacing omitted).)  However, that argument rests on the faulty premise that all light work requires six hours of standing or walking in an eight-hour workday.  Although "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," Social Security Ruling 83-10, Titles II and XVI: Determining Capability to Do Other Work – the Medical-Vocational Rules of Appendix 2, 1983 WL 31251, at *6 (1983) (emphasis added), the ALJ did not find, either in the RFC or

the dispositive hypothetical question to the VE, that Plaintiff remained capable of performing a <u>full</u> range of light work (<u>see</u> Tr. 43, 80). Rather, the ALJ found that Plaintiff could perform a <u>reduced</u> range of light work, i.e., jobs involving the lifting/carrying/pushing/pulling requirements of light work but entailing a maximum of only <u>four</u> hours of standing and/or walking in a workday. (<u>See</u> <u>id.</u>)

Moreover, because the ALJ found that Plaintiff could perform only a <u>reduced</u> range of light work (<u>see</u> <u>id.</u>), the ALJ consulted with a VE to determine the effect that a reduction of standing and/or walking from six to four hours would have on the light, unskilled occupational base:

> <u>If [Plaintiff] had the [RFC] to perform the full range of</u> <u>light work, a finding of "not disabled" would be directed</u> <u>by [Grid] Rule 202.18. However, [Plaintiff's] ability to</u> <u>perform all or substantially all of the requirements of</u> <u>this level of work has been impeded by additional</u> <u>limitations. To determine the extent to which these</u> <u>limitations erode the unskilled light occupational base,</u> <u>[the ALJ] asked the [VE] whether jobs exist in the</u> <u>national economy for an individual with [Plaintiff's]</u> <u>age, education, work experience, and [RFC]</u>. The [VE] testified that given all of these factors the individual would be able to perform the requirements of representative, unskilled sedentary occupations such as a(n):
>
>> 1) Inspector ([<u>DOT</u>] code 521.687-086), and having approximately 40,000 jobs in the national economy;
>>
>> 2) Assembly Worker ([<u>DOT</u>] code 713.687-018), and having approximately 42,000 jobs in the national economy; and

> 3) Packer/Stacker ([<u>DOT</u>] code 685.687-014), and
> having approximately 60,000 jobs in the national
> economy.

(Tr. 47-48 (emphasis added); <u>see also</u> Tr. 80-81).  The ALJ's

methodologies also complied fully with Social Security Ruling 83-

12, <u>Titles II and XVI: Capability to Do Other Work – the Medical-</u>

<u>Vocational Rules as a Framework for Evaluating Exertional</u>

<u>Limitations Within a Range of Work or Between Ranges of Work</u>, 1983

WL 31253(1983) ("SSR 83-12"):

> <u>Where an individual's exertional RFC does not coincide</u>
> <u>with the definition of any one of the ranges of work</u> as
> defined in sections 404.1567 and 416.967 of the
> regulations, the occupational base is affected and may or
> may not represent a significant number of jobs . . . .
> <u>The [ALJ] will consider the extent of any erosion of the</u>
> <u>occupational base and a[ss]ess its significance</u>. In some
> instances, the restriction will be so slight that it
> would clearly have little effect on the occupational
> base. In cases of considerably greater restriction(s),
> the occupational base will obviously be affected. In
> still other instances, the restrictions of the
> occupational base will be less obvious.
>
> <u>Where the extent of erosion of the occupational base is</u>
> <u>not clear, the [ALJ] will need to consult a vocational</u>
> <u>resource</u>.

SSR 83-12, 1983 WL 31253, at *2 (emphasis added).  Thus, because

the ALJ here appropriately consulted with a VE, he labored under no

obligation to further reconcile his RFC findings that Plaintiff

could perform a reduced range of light work, but only stand and/or

walk up to four hours in a workday.

Plaintiff additionally contends that a conflict exists between

the ALJ's <u>light</u> exertion RFC and the dispositive hypothetical

question, in that "the ALJ limited [Plaintiff] to <u>sedentary</u> work activity in the proposed hypotheticals [sic] to the VE[,]" (Docket Entry 11 at 6 (emphasis added) (citing Tr. 80)), and "[t]he VE testified only that there were <u>sedentary</u> jobs available . . . and did not indicate that [Plaintiff] could perform jobs at the light exertional level" (<u>id.</u> at 8 (emphasis added) (citing Tr. 80-81)). That contention misses the mark.

As an initial matter, the ALJ did not merely limit Plaintiff to "sedentary work activity" in the hypothetical question. Rather, the ALJ signaled that he "want[ed] to get the [reconsideration level state agency medical consultant's] evaluation on the record" and asked the VE whether a claimant could perform any jobs in the national economy if restricted to "what the [reconsideration level state agency medical consultant] described as <u>essentially sedentary</u> limitation." (Tr. 80 (emphasis added); <u>see also</u> Tr. 219, 233 (describing Plaintiff's "maximum sustained work capability" as "[e]ssentially [s]edentary").) Moreover, both the state agency medical consultant and the ALJ further defined "essentially sedentary" as being able to <u>lift 20 pounds occasionally, 10 [pounds] frequently; stand or walk four hours in an eight-hour day; sit six hours in an eight-hour day</u>." (<u>See</u> Tr. 80, 216, 230.) Thus, regardless of the exertional label applied to the hypothetical question's restrictions, i.e., "light," "essentially

sedentary," or "sedentary," those restrictions matched the RFC's restrictions and no conflict existed.[5]

For the same reasons, the fact that VE cited jobs classified by the DOT at the sedentary level of exertion does not render the ALJ's decision unsupported by substantial evidence. (See Tr. 80-81.)  The ALJ's finding that Plaintiff possessed the ability to lift and carry 20 pounds occasionally, and 10 pounds frequently (see Tr. 43, 80) necessarily means that she also could lift and carry at the sedentary level of exertion, which requires maximum lifting and carrying of only 10 pounds, see 20 C.F.R. §§ 404.1567(a), 416.967(a); see also 20 C.F.R. §§ 404.1567(b), 416.967(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as a loss of fine dexterity or inability to sit for long periods of time.").[6]

---

[5] Plaintiff correctly observes that the ALJ "did not specifically limit [Plaintiff] to unskilled work activity in the RFC," despite including a restriction to unskilled work in the hypothetical question to the VE. (Docket Entry 11 at 7 (citing Tr. 43, 80).)  However, that error remains harmless, see generally Fisher v. Bowen, 869 F.3d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a [Social Security] case in quest of a perfect opinion [from an ALJ] unless there is reason to believe that the remand might lead to a different result."), because the VE cited three unskilled jobs in response to the dispositive hypothetical question (see Tr. 80-81) and the ALJ adopted those jobs at step five of the SEP in finding Plaintiff not disabled (see Tr. 47-48).  Moreover, Plaintiff does not deny that she can perform the specific requirements of the unskilled jobs in question. (See Docket Entry 11 at 13-19.)

[6] The ALJ here found Plaintiff capable of sitting for up to six hours in an eight-hour workday and frequent fingering bilaterally (see Tr. 43, 80) and, thus, the exception contained in Sections 404.1567(b) and 416.967(b) does not apply here.

Plaintiff additionally maintains that, given the facts that her RFC as found by the ALJ actually represented sedentary exertion and that she fell "within [six] months of her 50th birthday as of the date of her hearing," (Docket Entry 11 at 10), "[t]he ALJ's failure to consider the non-mechanical application of [Rule 201.10] of the [Grids]" to find her disabled "is harmful error in [Plaintiff's] claim" (id. at 9 (bold font and single-spacing omitted)).  That argument falls short for the simple reason that, as explained above, the ALJ found Plaintiff capable of a reduced range of light work, not sedentary work.  (See Tr. 43, 80.)  Thus, as the Commissioner argues, Grid Rule 202.10 "would have applied and resulted in a finding of 'not disabled.'" (Docket Entry 14 at 15 (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 2, § 202.10).)

In sum, Plaintiff's first assignment of error fails as a matter of law.

### 2. Mental RFC

In Plaintiff's second and final issue on review, she asserts that "[t]he ALJ's failure to determine that [Plaintiff's] depression and anxiety were severe impairments and properly account for the limitations [Plaintiff] experiences as a result of these impairments in the RFC is harmful error and reversal and remand for further consideration is necessary." (Docket Entry 11 at 13 (bold font and single-spacing omitted).)  In particular, Plaintiff contends that, despite the ALJ's finding that Plaintiff suffered

from mild deficits in her ability to engage in activities of daily living, social functioning, and her ability to maintain concentration, persistence, or pace ("CPP") at step two of the SEP (see Tr. 42), "the ALJ fail[ed] to analyze the impact that [Plaintiff's] mild limitations in these functional areas would have on her RFC" (Docket Entry 11 at 15) in violation of Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015) (id. at 16-19 (citing McMichael v. Colvin, No. 1:15CV528, 2016 WL 4556768, at *2-6 (M.D.N.C. Aug. 31, 2016) (unpublished) (Webster, M.J.), recommendation adopted, slip op. (M.D.N.C. Sept. 29, 2016) (Schroeder, J.), Ashcraft v. Colvin, No. 3:13-CV-00417, 2015 WL 9304561, at *6-11 (W.D.N.C. Dec. 21, 2015) (unpublished), and Wedwick v. Colvin, No. 2:14CV267, 2015 WL 4744389, at *22-23 (E.D. Va. Aug. 7, 2015) (unpublished) (district judge adopting magistrate judge's recommendation))). Those assertions lack merit.

Plaintiff first attacks the ALJ's determination at step two of the SEP that Plaintiff's adjustment disorder and depressive disorder constituted non-severe impairments. (See id. at 13-15; see also Tr. 41-42.) In that regard, Plaintiff argues that the ALJ failed to "address [Plaintiff's] anxiety disorders, including her diagnoses of [post-traumatic stress disorder ('PTSD')]. . . after reporting intrusive thoughts of prior trauma" (Docket Entry 11 at 14 (citing Tr. 949, 951, 955)), and "mischaracterized [Plaintiff's] treatment record with [Licensed Professional Counselor Lora

Michelle Salley] at Jodi Province Counseling" by "fail[ing] to note that[,] despite regular therapy and progress[,] [Plaintiff] continued to report depressive and anxiety symptoms" (id. (citing Tr. 78, 414-19, 865, 957, 970, 984, 988, 993-97, 1018)). In addition, Plaintiff contends that "the ALJ's decision to assign the[] opinions [of the state agency psychological consultants that Plaintiff's mental impairments qualified as non-severe] great weight is not supported by substantial evidence" (id. at 15), because those opinions "pre-dated [Plaintiff's] entrance into counseling and treatment for depression and anxiety . . . which reveal[ed] more significant limitations from her depression and anxiety" (id. at 14-15).

Plaintiff's argument that the ALJ failed to "address [Plaintiff's] anxiety disorders, including her diagnoses of PTSD . . . after reporting intrusive thoughts of prior trauma" (id. at 14 (citing Tr. 949, 951, 955)) fails for two reasons. First, the ALJ listed Plaintiff's mental impairments as "adjustment disorder" and "depressive disorder" (Tr. 41 (emphasis added)) and expressly discussed the report of consultative psychological examiner Dr. Andrea Sinclair (id.; see also Tr. 803-07), who diagnosed Plaintiff with "adjustment disorder with mixed anxiety and depressed mood" (Tr. 807 (emphasis added)). Moreover, the ALJ accorded "great weight" to the opinions of the state agency psychological consultants (Tr. 41) who opined that Plaintiff's mental

impairments, analyzed under both Listing 12.04 (Depressive disorders) and Listing 12.06 (Anxiety-related disorders), qualified as non-severe (see Tr. 182-83, 196-97, 213-14, 227-28). Thus, the ALJ clearly considered Plaintiff's anxiety disorders. Second, Plaintiff has not shown that the record contains a valid diagnosis of PTSD, because LPC Salley did not diagnose PTSD but merely documented that Plaintiff reported "having intrusive thoughts[] and [] other [symptoms] of trauma" and recommended that Plaintiff continue to "receive treatment related to PTSD [symptoms]." (Tr. 955 (emphasis added); see also Tr. 949-54.) Moreover, as a Licensed Professional Counselor, LPC Salley does not qualify as an "acceptable medical source" under the regulations, and only "acceptable medical sources" can offer medical opinions that a claimant suffers from a particular impairment. See 20 C.F.R. §§ 404.1513(a), 416.913(a).

Plaintiff's argument that the ALJ "mischaracterized [Plaintiff's] treatment record with [LPC Salley] at Jodi Province Counseling" by "fail[ing] to note that despite regular therapy and progress[,] [Plaintiff] continued to report depressive and anxiety symptoms" (Docket Entry 11 at 14 (citing Tr. 78, 414-19, 865, 957, 970, 984, 988, 993-97, 1018)) fares no better. The ALJ noted that Plaintiff "reported depression, social isolation and physical problems" to LPC Salley at the outset of her counseling (Tr. 41), but correctly observed that, at subsequent treatment visits,

Plaintiff "consistently reported she was stable with her medications" (id.; see also Tr. 960, 965, 972), "said her family noticed a difference in her mood" (Tr. 41; see also Tr. 972), and "was noted to consistently make progress in therapy" (Tr. 41; see also Tr. 949-91). The ALJ labored under no obligation to discuss all of Plaintiff's subjective complaints to her counselor, see Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998); see also Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995), and clearly did not "mischaracterize" the records from Jodi Province Counseling.

Plaintiff also challenges the ALJ's decision to accord great weight to the opinions of the state agency psychological consultants, who opined that Plaintiff's mental impairments qualified as non-severe. (Docket Entry 11 at 15; see also Tr. 41, 182-83, 196-97, 213-14, 227-28.) According to Plaintiff, those opinions "pre-dated [Plaintiff's] entrance into counseling and treatment for depression and anxiety . . . which reveal[ed] more significant limitations from her depression and anxiety." (Docket Entry 11 at 14-15.) However, Plaintiff's argument conflates her own subjective reports of mental symptoms with objective findings by a clinician on mental status examination. The treatment records from Jodi Province Counseling largely reflect Plaintiff's subjective complaints, and the few objective findings by Family Nurse Practitioner Brenda Cupp describe Plaintiff's appearance as "[a]lert and oriented" (Tr. 965), "casually [and] neatly dressed"

18

(id.), and "appropriate" (Tr. 972), her speech as "clear[ with] normal tone" (Tr. 965), and her mood as "stable" (Tr. 972). Thus, because the record does not demonstrate more significant mental limitations post-dating the state agency psychological consultants' opinions, the ALJ did not err in assigning those opinions great weight.

Lastly, Plaintiff contends that, despite the ALJ's finding that Plaintiff suffered from mild deficits in her ability to engage in activities of daily living, social functioning, and her ability to maintain concentration, persistence, or pace ("CPP") at step two of the SEP (see Tr. 42), "the ALJ fail[ed] to analyze the impact that [Plaintiff's] mild limitations in these functional areas would have on her RFC" (Docket Entry 11 at 15), in violation of Mascio (see id. at 16-19 (citing McMichael, 2016 WL 4556768, at *2-6, Ashcraft, 2015 WL 9304561, at *6-11, and Wedwick, 2015 WL 4744389, at *22-23)).[7]

The United States Court of Appeals for the Fourth Circuit held in Mascio that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, as a neighboring district court has explained:

_____

[7] Contrary to Plaintiff's assertion that Wedwick remanded under Mascio due to the ALJ's failure to address a mild limitation in CPP (see Docket Entry 11 at 16), that court actually addressed a moderate limitation in CPP, Wedwick, 2015 WL 4744389, at *23.

> _Mascio_ does not broadly dictate that a claimant's _moderate_ impairment in [CPP] _always_ translates into a limitation in the RFC. Rather, _Mascio_ underscores the ALJ's duty to adequately review the evidence and explain the decision . . . .

_Jones v. Colvin_, No. 7:14CV00273, 2015 WL 5056784, at *10 (W.D. Va. Aug. 20, 2015) (magistrate judge's recommendation adopted by district judge) (unpublished) (emphasis added); _see also_ _Mascio_, 780 F.3d at 638 ("Perhaps the ALJ can explain why [the plaintiff's] _moderate_ limitation in [CPP] at step three does not translate into a limitation in [her RFC]." (emphasis added)).

Furthermore, it remains unclear whether _Mascio_ applies to _mild_ as opposed to _moderate_ limitations, and to limitations in broad functional areas other than CPP. While _McMichael_ and _Ashcraft_ both remanded for an ALJ's failure to adequately account for mild limitations in the broad areas of functioning, _see_ _McMichael_, 2016 WL 4556768, at *2-6 (CPP), _Ashcraft_, 2015 WL 9304561, at *6-11 (daily activities, social functioning, and CPP), many cases exist to the contrary, _see_ _Morrison v. Berryhill_, No. 1:16-CV-337-GCM-DCK, 2018 WL 1311207, at *5 (W.D.N.C. Feb. 8, 2018) (unpublished) (finding that the plaintiff's "heavy reliance on _Mascio_ . . . [wa]s misplaced" and noting that, since "about a month after the _Mascio_ decision," many cases in the Western District of North Carolina "have held that the requirements of _Mascio_ do not necessarily apply where a plaintiff is found to have _mild_ limitations in CPP"), _recommendation adopted_, 2018 WL 1308139

20

(W.D.N.C. Mar. 13, 2018) (unpublished); <u>Thorp v. Berryhill</u>, 3:16-CV-070-RJC, 2018 WL 325318, at *3 (W.D.N.C. Jan. 8, 2018) (unpublished) (holding that the "case differ[ed] markedly from <u>Mascio</u>" because the plaintiff "had mild difficulties maintaining [CPP]"); <u>Williamson v. Berryhill</u>, No. 7:16-CV-284-BO, 2017 WL 4293408, at *5 (E.D.N.C. Sept. 27, 2017) (unpublished) (deeming the "plaintiff's reliance on <u>Mascio</u> [] inapt" where ALJ found "only *mild* limitations in activities of daily living, social functioning, or CPP"); <u>Franklin v. Berryhill</u>, 1:16-CV-211-RJC, 2017 WL 4274190, at *2-3 (W.D.N.C. Sept. 26, 2017) (unpublished) ("This Court does not interpret <u>Mascio's</u> holding as applying to all restrictions."); <u>Gilbert v. Berryhill</u>, 5:16-CV-100-MOC, 2017 WL 1196452, at *3 (W.D.N.C. Mar. 29, 2017) (unpublished) ("As this case concerns only 'mild difficulties,' it does not trigger the RFC discussion requirements of <u>Mascio</u> per se." (internal quotation marks omitted)); <u>Guest v. Colvin</u>, No. 1:15CV00776, 2016 WL 4007612, at *6 (M.D.N.C. July 26, 2016) (unpublished) (expressing "doubt [] as to whether <u>Mascio</u>'s holding with regards to [CPP] should apply to" a case involving mild limitations in social functioning, "particularly given that the Fourth Circuit made clear its CPP-based holding rested on the distinction between the ability to perform simple tasks and the ability to stay on task, and such a distinction does not clearly apply in the social functioning context" (internal citation omitted), <u>recommendation adopted</u>, slip

op. (M.D.N.C. Aug. 24, 2016) (Schroeder, J.); <u>Thompson v. Colvin</u>, 1:15-CV-234-FDW, 2016 WL 3610161, at *3 (W.D.N.C. July 1, 2016) (unpublished) ("The Court does not read <u>Mascio</u> to impose a duty on ALJs to automatically or necessarily account for mild limitations in the RFC.").

Moreover, even assuming <u>Mascio</u> applies to 1) <u>mild</u> limitations in the broad areas of functioning (i.e., the lowest of four levels above "none"), and 2) functional areas other than CPP, Plaintiff has not shown prejudicial error here. First, although the RFC does not contain a mental limitation (<u>see</u> Tr. 43), the dispositive hypothetical question to the VE included a limitation to unskilled work (<u>see</u> Tr. 80), and the VE cited (and the ALJ adopted) three unskilled jobs (<u>see</u> Tr. 47-48, 80-81). Significantly, Plaintiff neither argues that unskilled work failed to capture her mild deficit in CPP nor suggests what additional limitations the ALJ should have included in the RFC to account for her mild limitations in daily activities, social functioning, and CPP. (<u>See</u> Docket Entry 11 at 13-19.) That failure precludes relief. <u>See</u> <u>Humphries v. Colvin</u>, No. 3:15-CV-376-GCM-DCK, 2016 WL 8223429, at *5 (W.D.N.C. Oct. 17, 2016) (rejecting similar claim where "it d[id] not appear that [the p]laintiff [wa]s actually alleging based on contradictory evidence in the record that she ha[d] limitations that [we]re not addressed by the RFC; rather, she [wa]s simply arguing that her 'at most, mild limitations' [we]re cause for

remand because the ALJ's decision d[id] not apply the same analysis the Fourth Circuit [in _Mascio_] would require for review of 'moderate' limitations in [CPP]"), _recommendation adopted_, 2017 WL 525666 (W.D.N.C. Feb. 8, 2017) (unpublished).

Finally, the ALJ supplied substantial evidence to support the lack of additional mental restrictions in the RFC/hypothetical question. He afforded "great weight" to the opinions of the state agency psychological consultants (Tr. 41) who each found that Plaintiff's mental impairments qualified as non-severe (_see_ Tr. 182-83, 196-97, 213-14, 227-28), and did not include any mental limitations in the RFC (_see_ Tr. 185-87, 199-201, 216-18, 230-32). The ALJ also discussed the findings of Dr. Sinclair, including that Plaintiff appeared "as appropriately groomed with a bright affect[, ] easily engaged in conversation, had logical thought processes, had good concentration, and her memory was intact." (Tr. 41; _see also_ Tr. 806.) The ALJ further noted that Dr. Sinclair opined that, despite Plaintiff's adjustment disorder with mixed anxiety and depressed mood, Plaintiff "could complete work-related tasks and that her disability was more physical than mental." (Tr. 41; _see also_ Tr. 807.)

Under such circumstances, Plaintiff has failed to demonstrate that the ALJ erred with regards to the mental RFC.

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

23

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Summary Judgment (Docket Entry 10) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 8, 2019